# JEWETT *vs.* GREENE.

If the plaintiff would avoid the bar of the statute of limitations, by having reasonably sued out process which failed of service through inevitable accident in the transportation by mail; it is incumbent on him to show that he previously ascertained the course of the mail, and that a letter enclosing the precept, and properly directed, was put into the post office sufficiently early to have reached the officer, by the ordinary route, in season for legal service.

The plaintiff is not bound, in such case, to send to the nearest officer; but is at liberty to send to any one within the county or precinct.

The eleventh section of the statute of limitations, 1821, *ch.* 62, which saves the remedy where the suit has been actually declared in, but the writ has casually failed of service, applies only to the actions mentioned in the eighth section, which are limited to six years.

If therefore, a suit against the sheriff for default of his deputy, which, by the sixteenth section, is limited to four years, is not commenced within the time mentioned in the statute, though the writ fail of service by inevitable accident, the remedy is gone forever.

THIS cause came up by exceptions filed by the plaintiff to the opinion of *Ruggles J.* in the court below. It was an action of the case against the late sheriff of the county of *Lincoln*, for the default of his deputy in not serving nor returning an execution, issued on a judgment recovered in the Common Pleas in this county. The defendant pleaded the general issue, and the statute of limitations applicable to actions against sheriffs for this cause. The plaintiff replied that a prior action had been commenced within the four years mentioned in the plea; and that the writ was sent to an officer for service; but that through inevitable accident it was not received by the officer in season to be served for the term at which it was returnable; and that the same writ was duly altered for the then next term of the same court. This replication was traversed; and issue taken thereon.

The execution was issued *July* 2, 1825, returnable in three months; and was proved to have been in the hands of the deputy in the course of that summer, who demanded payment of the debtor; but it was not returned till the term in which the present action

was tried. The writ in this case bore date *Feb.* 4, 1830. The coroner, who resided in *Dresden*, testified that the original writ in this case was sent to him in a letter from the plaintiff's attorney, postmarked at *Norridgewock, Oct.* 14, 1829; but was not received by him in season for service for the ensuing *November* term, to which it was returnable; wherefore he sent it back; and afterwards received it again, altered for *March* term 1830, to which he returned it duly served. He further stated that the mail came to *Dresden* only once a week; that there were two post offices in the town; and that letters sometimes came directed to the wrong office, which occasioned considerable delay.

The only evidence of the date of the original writ was derived from inspection of the writ itself, the date of which had been partly erased and altered; and from comparison of the writing, which was that of the plaintiff's attorney, with other writings proved or admitted to be his. The attorney himself was offered as a witness; but was rejected, being interested as indorser of the writ in the present suit. He then offered to make affidavit that the date was originally *Sept.* 4, 1829, and was afterwards altered to *October ;* but this was not admitted.

Hereupon the counsel for the defendant contended that there was no competent evidence tending to prove the time when the first " action was actually declared in, and the writ therein purchased ;" that the date of the first writ, if proved, would not be legal evidence of those facts; that there was no evidence of the date of that writ, except what was derived from the deposition of the coroner, which only proved its existence *Oct.* 14, 1829, which being the earliest time it was proved to exist, must be taken, in default of other proof, as the day it was actually made and purchased. He also contended that here was no evidence of any unavoidable accident by which the first writ failed of service; and that it failed only by the negligence of the plaintiff in not sending it to an officer in season. And the Judge was requested to instruct the jury on these points.

But the Judge instructed the jury that they might consider the default, if any, to have taken place from and after the return day

of the execution, which was *Oct.* 2, 1825 ; that the plaintiff must satisfy them that the first writ was made prior to that day ; and that if from inspection of the writ, and from the other evidence in the case, they should be satisfied that the writ was so made, and was returnable to the then next court in this county ; that it failed of service through inevitable accident, or the neglect of the coroner to whom it was directed; and that it was duly altered within three months after the term to which it was returnable, and was then made returnable to the next succeeding term, at which it was duly entered and prosecuted ; they might consider the statute of limitations as thereby saved, and find for the plaintiff :—That if they were satisfied, from the same evidence, that the writ bore date, as suggested by the plaintiff's counsel, *Sept.* 4, 1829, at the time it was first sent to the officer for service, the date was *prima facie* evidence that it was made and declared in on that day.

And that if the first writ was inclosed and forwarded by the mail for service, a reasonable time before the setting of the court to which it was returnable ; and the attorney who sent it had a reasonable and well founded expectation of its being received by the officer in season for service ; but it was not so received ; this was evidence of an unavoidable accident, within the meaning of the statute ; and they would determine from the evidence whether it was so inclosed and forwarded.

To which the defendant excepted; the jury having found for the plaintiff.

*Allen* and *W. W. Fuller*, in support of the exceptions, to the admissibility and effect of the evidence, cited *Brigham v. Esty*, 2 *Pick.* 420 ; *Ilsley v. Stubbs*, 5 *Mass.* 280 ; *Tidd's Prac.* 90, 293 ; 3 *Stark. Ev.* 1403 ;—that here was no evidence of the date of the writ, 2 *Stark. Ev.* 888, 889, *note ;*—that it was for the court, and not the jury, to determine whether the delay was unavoidable or not ; 1 *Stark. Ev.* 415, 416, *note (t.)* ; *Attwood v. Clark*, 2 *Greenl.* 249 ;—and that the saving clause in the statute applied only to actions of debt founded on a lending or contract, and not to suits against sheriffs, *Cook v. Darling*, 2 *Pick.* 605.

Jewett *v.* Greene.

*Tenney,* for the plaintiff, argued that the evidence of the date was properly left to the jury, and that they were right in presuming the apparent to be the true date; 1 *Stark. Ev.* 284. The failure of the service presented a question, not of reasonableness or unreasonableness of delay in the plaintiff; but of accident or no accident; which was purely a question of fact, and therefore properly submitted to the jury. 1 *Stark. Ev.* 412, 417, 424; *Brier v. Woodbury,* 1 *Pick.* 368. And he contended that the saving clause in the statute extended to all actions of the case, for whatever cause they might be brought.

The opinion of the Court was delivered at the ensuing term in *Penobscot,* by

PARRIS J. The statute having been pleaded in bar it is incumbent on the plaintiff to remove the bar. He contends that his case comes within the class of cases provided for in the 11th section of our limitation act. If so, and he has shown that the first writ failed of a sufficient service by unavoidable accident he is entitled to judgment. We will first consider the proof of accident. If the plaintiff relies upon accident arising from irregularity or miscarriage of the mail, he must shew that his letter was put into the post office sufficiently early to reach the officer to whom it was directed in season for service by due course of that mail by which he sends. Through some parts of the county of *Lincoln,* the mail passes every day. It does so through *Bath,* where the defendant resides, and through other towns which are as near his residence as *Dresden.* If, from any consideration, the plaintiff saw fit to send his writ for service to an officer in *Dresden* or any other town in the county, even the most remote, he had a perfect right to do so, and is not to be prejudiced thereby, provided he sent it in such season as that by the due and usual course of the mail to that town the precept would reach the officer sufficiently early for legal service. This he must show as a necessary link in the chain of evidence to prove the accident; for if the letter was not seasonably put into the

office, then its non-arrival cannot, by the party sending it, be attributed to unavoidable accident.

From the exceptions it appears that the letter was post marked *Oct.* 14, which was Wednesday. Whether it left *Norridgewock* on that day, or was then received at the office and sent by the next mail, does not appear ; probably it was sent on that day. The time of service for the court to which the writ was returnable expired on the next Tuesday. To establish the fact then that it was seasonably deposited in the office he must shew that a letter put in at *Norridgewock* on Wednesday, as this was, would, by due course of the mail, arrive at *Dresden* sufficiently early to enable an officer, after receiving it there, to make service of a precept in *Bath*, before the expiration of the Tuesday next ensuing ; for unless that fact be proved, the legal inference from what does appear in the case is, that the delay in receiving the letter is attributable to the omission of the plaintiff or his attorney to put it seasonably into the post office, rather than to any accident growing out of the irregularity or failure of the mail.

This presumption arises from the want of proof, on the part of the plaintiff, to show how the fact was, and which, easily obtainable as it was, he would not probably have neglected to procure, if such proof would have made in his favor. The exceptions do not show that this fact was established either directly or by any inference that can be drawn from the testimony. On the contrary if the mail arrived at *Dresden* on Wednesday in each week it is certain, or if on Tuesday it is probable, that the letter containing this writ could not have reached there in season for service. On what day it did regularly arrive does not appear by the exceptions. As the exceptions purport to give all the evidence in the case, and as upon the point under consideration there was no conflicting testimony, we are called upon to decide as a question of law, whether the proof offered by the plaintiff, standing uncontradicted, as it does, supports the allegation of unavoidable accident ; and we have no hesitation in saying that it does not. The writ may have failed of service from that cause, or, what is more probable from the facts proved, the failure is attributable to the plaintiff's neglect. He has not shown

the former, and the law requires him to do it even before the defendant is to be called upon to support his defence.

The statute protects the sheriff, generally, from all actions for the misconduct and negligence of his deputies, unless commenced and sued within four years next after the cause of action, and that protection must avail the defendant in this case, unless the plaintiff can avoid it by establishing the facts alleged in his replication, and by showing that his case comes within the exception. It is not sufficient that he merely allege the facts. On him rests the burthen of proving them. He asserts that the first writ was made on the 4th of *Sept.* If so, it remained in his hands, or his attorney's from that time to the fourteenth of *October*, a period of nearly six weeks, and until less than one week previous to the expiration of the time of service for the court to which it was returnable. It was then sent to an officer residing in a town where the mail arrives but once a week : and without showing that by due course of mail it could have possibly reached the officer in season for service, and when, from his own testimony, it is apparent that he might not, he calls upon the jury to say that it failed of service by unavoidable accident. Such a procedure cannot comport with either the letter or spirit of the statute. If the mail performed its usual course, and the letter was conveyed without miscarriage, but did not reach *Dresden* in season for service, how can the failure be attributable to accident, or how can the plaintiff's well founded expectations of its arrival have any bearing upon the question of accident?

It was incumbent on him to ascertain the course of the mail, and at his peril to send his writ in such time as that, without miscarriage, it would arrive in season. But further, the four years expired on the second of *October*, and yet, according to the plaintiff's statement, notwithstanding the writ had then been made four weeks, he continues to keep it in his possession nearly two weeks longer before he transmits it to the officer. If he had shown that there was then time for it seasonably to reach the officer by the conveyance which the plaintiff selected, he would not be chargable on account of the previous delay. But, inasmuch, as he neither does or attempts to show this, the presumption is that it failed by reason

of not having been seasonably put into the post office ; and without any evidence to rebut that presumption, and there was none, the defendant might well ask that the jury should be instructed that there was no evidence of unavoidable accident by which the first writ failed of service.

But if the facts alleged in the plaintiff's replication had been abundantly proved, we are of opinion that they do not avoid the plea. By recurring to the statutes of Massachusetts, it will be perceived that our general statute of limitations is made up of several statutes of the Commonwealth, passed at different times, and applicable to different kinds of suits. The 8th and 11th sections of our statute are copied *verbatim*, or nearly so, from the Massachusetts statute of 1794, which relates solely to actions of the case or of debt grounded upon any lending or contract declared in within the term of six years next after the cause of action accrued. This statute was limited in its application to actions arising *ex contractee*, and the first section provides what shall be deemed the commencement of such an action. By other statutes the limitation was so extended as to embrace personal actions of almost every description, limiting their commencement to different periods after the cause of action arose, but omitting the declaratory provision, as to what should constitute the commencement of an action, contained in the first section.

Upon a revision of the statutes by our Legislature, section 7th is made to include all or nearly all actions of a personal nature, including those arising *ex delicto* as well as *ex contractee* ; and the provision that the actions " shall be commenced and sued within the time and limitation expressed," applies to all actions whether of *tort* or contract. Then follows the 8th section, which provides what shall be deemed and taken to be the commencement and suing of an action of the case or of debt grounded upon any lending or contract, viz. declaring in a proper writ, returnable according to law, purchased therefore within the term of six years next after the cause of action accrued ; and the 11th section, which contains the saving clause on which the plaintiff relies, provides that any action which shall be actually declared in as aforesaid (that is, in a proper

writ, returnable according to law, purchased therefor within the term of six years next after the cause of action accrued,) and in which the writ purchased therefor shall fail of a sufficient service or return by any unavoidable accident, &c. then, and in any such case, the plaintiff or plaintiffs or his or her executor or administrator, may commence another action upon the same demand, and shall thereby save the limitation thereof.

As the 11th section is wholly silent as to the limitation within which the first action shall have been commenced, it is necessary to refer to other parts of the statute to ascertain to what the phraseology " any action, which shall be actually declared in as aforesaid" applies; and we find nothing to which it can refer, except the 8th section, the declaring in the action not being mentioned or referred to in any other section.

If the 11th section refers only to the class of cases embraced in the 8th, it is manifest that it cannot include the case before us, as such actions are by the 16th section to be commenced and sued within four years, while the 8th section embraces only such cases as are to be commenced and sued within six years. This distinction seems not to have been noticed at the trial, and would be fatal to the plaintiff's action, however strong might be his proof.

What consideration influenced our Legislature to keep up the distinction which seems to have been adopted in Massachusetts in favor of the class of actions included in the 8th section of our statute, it is not material for us to inquire. It has been judicially settled in that State in *Cook v. Darling*, cited in the argument, that the distinction exists under their statute, the language of which, the court say, is too clear to be misunderstood. The language of our statute is equally clear, being nearly similar and must have the same construction.

The exceptions are sustained, and a new trial is ordered at the bar of this court.